Matthew R. Lewis (7919)
Jascha K. Clark (16019)
Brittany J. Merrill (16104)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Ste. 1400
P.O. Box 45385
Salt Lake City, Utah  84145-0385
Telephone:  (801) 532-1500
Facsimile: (801) 532-7543
E-mail: mlewis@rqn.com
E-mail: jclark@rqn.com
E-mail: bmerrill@rqn.com
*Attorneys for Receiver, Maria E. Windham*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARIA E. WINDHAM, as Receiver for MARQUIS PROPERTIES, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> MARSHALL COREY, an individual; FLORENCE COREY, an individual; F COREY ENTERPRISES, LLC, is an expired Utah liability company; TODD DORNY, an individual; KUKANA HOLDINGS, a limited liability company; TOM FELT, an individual, ELLWOOD HOLDINGS, LLC, a limited liability company; ALPINE MOTOR SPORTS, LLC, a limited liability company; PHYLLIS JONES, an individual; THERE'S NO PLACE LIKE HOME, LLC, is a revoked Nevada limited liability company; MAURICE DOUGLAS MOORE, an individual; DEBRA MOORE, an individual, CHARLES SCHUBERT, an individual, SOUTHWEST CASTLES HOLDINGS, is an expired limited liability company; and DOES 1-5, <br><br> Defendants. | **COMPLAINT** <br> **(Ancillary Suit)** <br><br><br> Case No. 2:18-cv-00065-EJF <br><br> Magistrate Judge Evelyn J. Furse |

Maria E. Windham (the "Receiver"), as Receiver for Marquis Properties, LLC and the assets of the Marquis Properties Receivership Estate complains against Defendants Marshall Corey, Florence Corey, F. Corey Enterprises, Todd Dorny, Kukana Holdings, Tom Felt, Ellwood Holdings, LLC, Alpine Motor Sports, LLC, Phyllis Jones, There's No Place Like Home, LLC, Maurice Douglas Moore, Debra Moore, Charles Schubert, Southwest Castles Holdings, and Does 1-5 (each a "Defendant" and collectively, "Defendants") as follows:

## INTRODUCTION

This lawsuit is related to a real estate Ponzi scheme (the "Marquis Ponzi Scheme") perpetrated by Chad Deucher through Marquis Properties, LLC ("Marquis Properties"). Chad Deucher pleaded guilty in his criminal case to operating Marquis Properties as a Ponzi scheme from 2010 to 2016, and he is currently serving 84 months of prison time. *See United States v. Chad Roger Deucher*, United States District Court for the District of Utah, Case No. 2:16-CR-189-DN.

This is one of several "claw back" lawsuits concerning the Marquis Ponzi Scheme filed by the Receiver appointed by the Court in the civil case filed by the Securities and Exchange Commission ("SEC") concerning the Marquis Ponzi Scheme. In this lawsuit, the Receiver seeks to "claw back" into the Marquis Properties Receivership Estate payments of false profits that Chad Deucher caused Marquis Properties to transfer directly or indirectly to the Defendants or to third parties on behalf of the Defendants.

Each Defendant must return all payments of false profits the Defendant received from Marquis Properties (or that Marquis Properties paid to another for the Defendant's benefit) because Chad Deucher, acting with fraudulent intent in furtherance of the Marquis Ponzi Scheme

while Marquis Properties was insolvent, caused Marquis Properties to transfer those payments as false profits.  The payments of false profits, including those identified below, belong to a series of similar payments of false profits to investors that Chad Deucher caused to be made from the investments of other investors in the Marquis Ponzi Scheme.  Marquis Properties did not receive reasonably equivalent value for these transfers of false profits paid to perpetuate the Marquis Ponzi Scheme, and the Defendants were unjustly enriched by receipt of these payments at the expense of other victim investors.  Together, the value of the payments of false profits that Chad Deucher wrongfully caused Marquis Properties to pay to the named Defendants amounts to at least $500,000.

## PARTIES

1.      Maria E. Windham is the court-appointed Receiver for Marquis Properties and the Marquis Properties Receivership Estate.

2.      Defendant Todd Dorny is an individual who resides in Kauai County, Hawaii. Defendant Kukana Holdings, is a limited liability company owned and controlled by Todd Dorny with its principal place of business in Kauai County, Hawaii.  Collectively, Todd Dorny and Kukana Holdings are identified herein as the "Dorny Defendants."

3.      Defendant Tom Felt is an individual who resides in Utah County, Utah. Defendant Ellwood Holdings, LLC is a limited liability company owned and controlled by Tom Felt with its principal place of business in Utah County, Utah.  Defendant Alpine Motor Sports, LLC, a limited liability company with its principal place of business in Iron County, Utah.  Tom Felt is an agent of Defendant Alpine Motor Sports, LLC and, upon information and belief, Tom Felt owns or controls this entity.  Collectively, Tom Felt, Ellwood Holdings, LLC, and Alpine

3

Motor Sports, LLC are identified herein as the "Felt Defendants."

4.     Defendant Phyllis Jones is an individual who resides in Webb County, Texas. Defendant There's No Place Like Home, LLC, is a revoked limited liability company that is, upon information and belief, owned and controlled by Phyllis Jones and located in Clark County, Nevada.  Collectively, Phyllis Jones and There's No Place Like Home, LLC are identified herein as the "Jones Defendants."

5.     Defendant Maurice Douglas Moore is an individual who resides in Utah County, Utah.  Defendant Debra Moore is an individual who resides in Utah County, Utah.  Together Maurice Douglas Moore and Debra Moore are identified herein as the "Moore Defendants."

6.     Defendant Charles Schubert is an individual who resides in Denver, Colorado. Southwest Castles Holdings is an expired Colorado limited liability company owned and controlled by Charles Schubert with its principal place of business in Arapahoe County, Colorado.  Together Charles Schubert and Southwest Castles Holdings are identified herein as the "Schubert Defendants."

7.      Does 1 through 5 are individuals or entities whose identities are presently unknown who received transfers of false profits from Marquis Properties directly or indirectly through the named defendants or on behalf of the named Defendants. The Receiver will move to amend her Complaint as the Does' identities become known.

## JURISDICTION AND VENUE

8.     The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 754, and principles of ancillary or supplemental jurisdiction under 28 U.S.C. § 1367.  This Complaint is brought to accomplish the objectives of the Amended Order

Appointing Receiver, and thus this matter is ancillary to the Court's exclusive jurisdiction over the receivership estate.

9.      The Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. §§ 754 and 1692.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 754 as this action is related to the SEC's parallel civil case pending in this District and the Receiver was appointed in this District.

## GENERAL ALLEGATIONS

### Marquis Ponzi Scheme

11.     Marquis Properties was operated by its principal Chad Deucher as a Ponzi scheme at all times relevant to the matters asserted in this action.

12.     On information and belief, Chad Deucher raised this money from over 250 investors in Marquis Properties.

13.     Chad Deucher generally represented to investors that Marquis Properties offered investments in turnkey real estate properties, promissory notes secured by real properties, and joint venture agreements to purchase real properties.  In that regard, Chad Deucher represented that Marquis Properties located, purchased, renovated, and sold single family and small multi-family homes in lucrative areas of the country.  Chad Deucher told investors that Marquis Properties has proven renovation crews, property managers and realtors on the ground to assist with all stages of the project, eliminating the need for direct involvement by the investors.

14.     Chad Deucher represented to investors that they would receive guaranteed return of principal and returns on their investment in the form of rental income, interest payments,

and/or profits from the sale of properties.  He promised that Marquis Properties would pay return of "rents" on their investments even when no renters occupied the real properties.

15.     The investments offered by Marquis Properties constitute securities.

16.     Chad Deucher represented that investments with Marquis Properties were safe, low-risk, or risk-free because investment proceeds would be secured by a first deed of trust on property wholly owned by Marquis Properties, and that investments would be "over-collateralized."

17.     Chad Deucher omitted to disclose to investors, however, that (a) the properties Marquis Properties offers as collateral were not owned by Marquis Properties, were substantially encumbered, and/or were in uninhabitable or blighted condition; (b) that Marquis Properties itself was insolvent and unable to make investor interest and principal payments according to terms of agreements; and (c) that investor returns were being paid from the funds of new investors.

18.     In April 2017, Chad Deucher pleaded guilty in his parallel criminal case, Case No. 2:16-CR-189-DN, to operating Marquis Properties as a Ponzi scheme between March 2010 and February 2016. Moreover, in his statement in advance of his guilty plea, Chad Deucher admitted that he had engaged in securities fraud in relation to the sale of real-estate based securities.  *See* Case No. 2:16-CR-189-DN, Dkt. No. 50 at ¶¶ 11(a)-(e).

19.     On October 11, 2017, Chad Deucher was sentenced to 84 months in federal prison, and, upon his release, 36 months of supervised release.  Chad Deucher was also ordered to pay $16,560,552.00 in restitution.

**The SEC Action**

20. On January 19, 2016, in case No. 2:16-cv-00040-JNP, the SEC filed suit (the "SEC Action") against Chad Deucher, Richard Clatfelter and Marquis Properties, LLC. Chad Deucher's wife, Jessica Deucher, was named as a relief defendant.

21. On January 20, 2016, this Court entered the Order Freezing Assets and Protecting Documents (Dkt. No. 10) (the "Freeze Order").

22. The Freeze Order specifically ordered that:

Except as otherwise specified herein, all of Defendants' Assets are frozen. All persons and entities with direct or indirect control over any of Defendants' Assets, who receive actual notice of this order, are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, encumbering, concealing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such assets. This freeze shall include, but is not limited to, Defendants' Assets that are on deposit with financial institutions such as banks, brokerage firms and mutual funds. Such institutions are caused to hold or retain within their control and prohibit the withdrawal, removal, transfer, or other disposal of any such assets, funds, or other properties.

(*See id.* at 2-3.)

23. On January 18, 2017, the Court entered the Order Appointing Receiver, pursuant to which Maria E. Windham was appointed Receiver. (*See* Dkt. No. 110.)

24. On October 24, 2017, the Court amended the terms of the Order Appointing Receiver and issued an Amended Order Appointing Receiver.[1] (Dkt. No. 182.)

25. The Court found appointment of the Receiver to be "necessary and appropriate for the purposes of marshaling and preserving Defendants Marquis Properties (the 'Entity Receivership Defendant') and Chad Deucher (the 'Individual Receivership Defendant')

---

[1] On January 12, 2018, the Court entered a further Order Reappointing Maria E. Windham Receiver that reappointed Ms. Windham on the same terms. (Dkt. No. 205.) This procedure is utilized to reset the 10 day clock to file notices pursuant to 28 U.S.C. § 754.

(collectively the 'Receivership Defendants') assets that were frozen by the [Freeze Order]."
(Dkt. No. 182).

26.     The Court defined the "Receivership Estate" as the assets of Marquis Properties,
LLC and Chad Deucher that were frozen by the Court's Order Freezing Assets on January 20,
2016 ("Frozen Assets"), as well as the assets of any other entities or individuals that: (a) are
attributable to funds derived from investors or clients of the Defendants; (b) are held in
constructive trust for the Defendants; and/or (c) were fraudulently transferred by the Defendants
(the "Recoverable Assets").[2]  (*Id.* at 1-2.)

27.     Further, the Court found that based on the record in the proceedings before it, the
Frozen Assets and Recoverable Assets include, but are not limited to, all assets of the following
entities owned or operated by the Individual Receivership Defendant: Marquis Air, LLC;
Marquis Companies, LLC; Marquis Enterprises, LLC; Marquis, LLC; Marquis Direct; Invo; and
Invo Direct (collectively with Marquis Properties, the "Marquis Entities").  (*Id.* at 2.)

28.     Moreover, the Court ordered that for any of the Receivership Defendants'
property or interest in property, of any kind whatsoever, whether real or personal, whether direct
or indirect, to be excluded from the Receivership Estate, the Receivership Defendants must file
an accounting with the Court, including books and records sufficient to identify a source of the
assets that is unconnected with investor funds, frozen assets, or other fraudulent activities, within
20 days of the entry of Amended Order Appointing Receiver.  (*Id.* at ¶ 4.)

29.     Pursuant to the terms of the Amended Order Appointing Receiver, the Receiver is
charged with, among other things, investigating the activities of the Receivership Defendants,

---

[2] Except, the Court excluded the residence titled in the name of Relief Defendant, Jessica Deucher located at 1136 North 650 East, Orem Utah from the Receivership Estate. (Dkt. No. 182).

gathering and recovering assets of the Receivership Defendants, including pursuing claims to recover those assets, as necessary.  Specifically, Paragraph 6 of the Amended Order Appointing Receiver vests the Receiver with, among other authority, "all powers and authority of a receiver at equity."  (*See id.*at ¶ 6.)  The Receiver is caused to "pursue and preserve all of the Marquis Entities claims (*id.* at 7), and she has authority to "bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging her duties as Receiver."  (*Id.* at ¶ 9(I); s*ee also id.* at ¶ 36.)

**Fraudulent Transfers of False Profits to Defendants**

30.     While Chad Deucher operated Marquis Properties as a Ponzi scheme, and while Marquis Properties, LLC was insolvent, Chad Deucher caused a series of payments of false profits to be made to Defendants from Marquis Properties' bank accounts where the funds of victim investors were deposited.

31.     Chad Deucher caused Marquis Properties to make these payments of false profits, which constitute a related series of payment transactions, in furtherance of his fraud.

32.     Chad Deucher caused Marquis Properties to make these payments of false profits to Defendants to provide an appearance of legitimacy and lure additional victim investors into the Ponzi scheme.  Each and every one of these payments of false profits reduced the assets of Marquis Properties available to repay other victim investors the principal they had invested.

33.     Upon information and belief, the Defendants cannot establish that they provided reasonably equivalent value for each of the payments of false profits received and did so in good faith without reason to know the payment was improper.

**Specific Payments Made to Each Defendant**

**The Corey Defendants**

34.     Defendants Marshall Corey, Florence Corey, and/or F Corey Enterprises invested money into Marquis Properties while it was controlled by Chad Deucher and operated as the Ponzi scheme.

35.     Upon information and belief, based on the bank records of Marquis Properties, the sum of the investments made by the Corey Defendants totaled $230,500.

36.     However, Chad Deucher, acting with fraudulent intent and for the purpose of perpetuating the Marquis Ponzi scheme, caused Marquis Properties to pay the Corey Defendants false profits in an amount that exceeded the principal the Corey Defendants invested with Marquis Properties.

37.     Upon information and belief, based on the bank records of Marquis Properties, the sum of the payments made by Marquis Properties to the Corey Defendants totaled $363,790.12

38.      Chad Deucher caused Marquis Properties to make the excess payments of false profits by paying a series of payments of purported "rents" and other incremental payments between 2011 and 2015.  The following is an example of the many payments made to and/or for the benefit of the Corey Defendants from Marquis Properties accounts:

   a.  On May 6, 2011, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561 to Equity Trust Company in the amount of $1,830 with the notation "Florence Corey IRA # Colorado, indy 2 months."   Chad Deucher categorized this transaction in his Marquis Properties ledger as "Rent."

   b.  On December 8, 2011, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561 to Equity Trust Company in the amount of $2,160 with the notation "Marshall Corey 1 Month November Early"   Chad Deucher categorized this transaction in his Marquis Properties ledger as "Rent."

   c.  On June 20, 2014, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 8798 to F. Corey Enterprises, LC in the amount of $4,126.50 with the notation "Rent 1 month."   Chad Deucher categorized this transaction in his Marquis Properties ledger as "Rent."

39.   The source of these payments to the Corey Defendants was investor funds.

40.   Altogether, the Corey Defendants were, upon information and belief, the recipients and/or beneficiaries of at least $133,290.12 in payments from Marquis Properties, which constitute false profits paid to the Corey Defendants in excess of any value provided by the Corey Defendants to Marquis Properties.

41.   Therefore, the Corey Defendants received certain payments for which they cannot prove they provided reasonably equivalent value in good faith.

42.   The Corey Defendants would be unjustly enriched if they were permitted to retain the benefit of payments transferred to them from other victim investors' funds.

**The Dorny Defendants**

43.   Defendants Todd Dorny and/or Kukana Holdings invested money into Marquis Properties while it was controlled by Chad Deucher and operated as a Ponzi scheme.

44.   Upon information and belief, based on the bank records of Marquis Properties, the

sum of the investments made by the Dorny Defendants totaled no more than $492,700.

45.     However, Chad Deucher, acting with fraudulent intent and for the purpose of perpetuating the Marquis Ponzi scheme, caused Marquis Properties to pay the Dorny Defendants false profits in an amount that exceeded the principal of the investment the Dorny Defendants invested with Marquis Properties.

46.     Upon information and belief, based on the bank records of Marquis Properties, the sum of the payments made by Marquis Properties to the Dorny Defendants amounted to more than $619,300.

47.      Chad Deucher caused Marquis Properties to make the excess payments of false profits to the Dorny Defendants by paying a series of payments of purported "rents" and other payments between October 2010 and August 2012.  The following is an example of the many payments made to and/or for the Dorny Defendants from Marquis Properties accounts:

        a.   On October 19, 2010, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to the Kukana Holdings in the amount of $17,300.

48.     The source of these payments to the Dorny Defendants was investor funds.

49.     Altogether, the Dorny Defendants were, upon information and belief, the recipients and/or beneficiaries of at least $126,600 in payments from Marquis Properties, which constitute false profits paid to the Dorny Defendants in excess of any value the Dorny Defendants provided to Marquis Properties.

50.     Therefore, the Dorny Defendants received certain payments for which they cannot prove they provided reasonably equivalent value in good faith.

51.    The Dorny Defendants would be unjustly enriched if they were permitted to retain the payments transferred to them from other victim investors' funds.

**The Felt Defendants**

52.    The Defendants Tom Felt, Ellwood Holdings, and/or Alpine Motor Sports, LLC invested money into Marquis Properties while it was controlled by Chad Deucher and operated as a Ponzi scheme.

53.    Upon information and belief, based on the bank records of Marquis Properties, the sum of the investments made by the Felt Defendants totaled no more than $126,365.

54.    However, Chad Deucher, acting with fraudulent intent and for the purpose of perpetuating the Marquis Ponzi scheme, caused Marquis Properties to pay the Felt Defendants false profits in an amount that exceeded the principal the Felt Defendants invested with Marquis Properties.

55.    Upon information and belief, based on the bank records of Marquis Properties, the sum of the payments made by Marquis Properties to the Felt Defendants amounted to more than $281,091.50.

56.     Chad Deucher caused Marquis Properties to make the excess payments of false profits by paying a series of payments of purported "rents" and other payments between October 2013 and September 2014.  The following is an example of the many payments made to the Felt Defendants from Marquis Properties accounts:

    a.   On October 25, 2013, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 8978, to Tom Felt in the amount of $100,000, and the notation on the transaction was "Payment for closing 57th

13

Street, Kansas City, MO."

57.    The source of these payments to the Felt Defendants was investor funds.

58.    Altogether, the Felt Defendants, upon information and belief, were the recipients and/or beneficiaries of at least $154,726.50 in payments from Marquis Properties, which constitute false profits paid to the Felt Defendants in excess of any value the Felt Defendants provided to Marquis Properties.

59.    Therefore, the Felt Defendants received certain payments for which they cannot prove the provided reasonably equivalent value in good faith.

60.    The Felt Defendants would be unjustly enriched if they were permitted to retain the payments transferred to them from other victim investors' funds.

**The Jones Defendants**

61.    Defendants Phyllis Jones and/or There's No Place Like Home, LLC invested money into Marquis Properties while Marquis Properties was controlled by Chad Deucher and operated as a Ponzi scheme.

62.    Upon information and belief, based on the bank records of Marquis Properties, the sum of the investments made by the Jones Defendants totaled no more than $44,000.

63.    However, Chad Deucher, acting with fraudulent intent and for the purpose of perpetuating the Marquis Ponzi scheme, caused Marquis Properties to pay the Jones Defendants false profits in an amount that exceeded the principal the Jones Defendants invested with Marquis Properties.

64.    Upon information and belief, based on the bank records of Marquis Properties, the sum of the payments made by Marquis Properties to and/or for the benefit of the Jones

14

Defendants amounted to more than $90,800.

65.     Chad Deucher caused Marquis Properties to make the excess payments of false profits by paying a series of payments of purported "rents" and other incremental payments between April 2011 and March 2013.  The following is an example of the many payments made to and/or for the benefit of the Jones Defendants from Marquis Properties accounts:

   a.  On April 16, 2011, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to Phyllis Jones in the amount of $900, and the notation on the transaction was "Rent for 1 Month."

66.     The source of these payments to the Jones Defendants was investor funds.

67.     Altogether, the Jones Defendants, upon information and belief,  were the recipients and/or beneficiaries of at least $46,800 in payments from Marquis Properties, which constitute false profits paid to and/or for the benefit of the Jones Defendants in excess of any value provided by the Jones Defendants to Marquis Properties.

68.     Therefore, the Jones Defendants received certain payments for which they cannot prove that they provided reasonably equivalent value in good faith.

69.     The Jones Defendants would be unjustly enriched if they were permitted to retain the payments transferred to them from other victim investors' funds.

**The Schubert Defendants**

70.     Defendants Charles Schubert and/or Southwest Castles Holdings invested money into Marquis Properties while Marquis Properties was controlled by Chad Deucher and operated as a Ponzi scheme.

71.     Upon information and belief, based on the bank records of Marquis Properties, the

Schubert Defendants did not make any investments with Marquis Properties.

72.     However, Chad Deucher, acting with fraudulent intent and for the purpose of perpetuating the Marquis Ponzi scheme, caused Marquis Properties to pay the Shubert Defendants false profits in an amount that exceeded the principal the Schubert Defendants invested with Marquis Properties.

73.     Upon information and belief, based on the bank records of Marquis Properties, the sum of the payments made by Marquis Properties to and/or for the benefit of the Schubert Defendants amounted to more than $41,118.52.

74.      Chad Deucher caused Marquis Properties to make the excess payments of false profits by paying a series of payments of purported "rents" and other payments between May2013 and April 2015.  The following is an example of the many payments made to and/or for the benefit of the Schubert Defendants from Marquis Properties accounts:

> b.  On May 6, 2013, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to the Charles Schubert in the amount of $1,980, and the notation on the transaction was "1 month 3304 college for Accelerated."

75.     The source of these payments to the Schubert Defendants was investor funds.

76.     Altogether, the Schubert Defendants, upon information and belief, were the recipients and/or beneficiaries of at least $41,118.52 in payments from Marquis Properties, which constitute false profits paid to and/or for the benefit of the Schubert Defendants in excess of any value provided by the Schubert Defendants to Marquis Properties.

77.     Therefore the Schubert Defendants received certain payments for which they

16

cannot prove they provided reasonably equivalent value in good faith.

78.     The Schubert Defendants would be unjustly enriched if they were permitted to retain payments transferred to them from other victim investors' funds.

**John Doe Defendants**

79.     Upon information and belief, the John Doe Defendants, whose identities are presently unknown to the Receiver, received additional transfers of funds directly or indirectly from Marquis Properties, through or on behalf of the Defendants named herein without themselves taking such payments in good faith and for reasonably equivalent value.

80.      Upon information and belief, the John Doe Defendants received transfers of funds directly or indirectly from Marquis Properties through or on behalf of the Defendants named herein under circumstances that make their retention of such payments unjust.

**FIRST CLAIM FOR RELIEF**
(**Fraudulent Transfer – Utah Uniform Fraudulent Transfer Act – All Defendants**)

81.      The Receiver realleges and incorporates by this reference the foregoing paragraphs of the Complaint.

82.     Each and every Defendant received transfer(s) of assets from Marquis Properties and/or is a beneficiary of the transfer(s) of assets from Marquis Properties.

83.     At all times relevant to the matters asserted herein, Chad Deucher operated Marquis Properties as a Ponzi scheme.

84.     Because the transfers were made at the direction of Chad Deucher while Marquis Properties was operated as a Ponzi scheme, as a matter of law, these transfers were made by Chad Deucher with the intent to hinder, delay or defraud creditors and/or investors of Marquis Properties.

17

85.     Furthermore, the transfers were made at a time when Marquis Properties was insolvent.

86.     The payments were made from investor funds and reduced the amount of money available to return to investors.

87.     Defendants will be unable to establish that Marquis Properties received reasonably equivalent value for the transfers and that Defendants took the payments or the benefit of the payments in good faith.

**SECOND CLAIM FOR RELIEF**
**(Unjust enrichment – All Defendants)**

88.     The Receiver realleges and incorporates by this reference the foregoing paragraphs of the Complaint.

89.     A benefit was conferred upon each and every Defendant by transfer(s) of assets belonging to Marquis Properties to the Defendant or to another for the Defendant's benefit.

90.     Each and every Defendant knew of the benefit conferred upon him or her by the receipt of assets or the benefit of the assets from Marquis Properties.

91.     Each and every Defendant's retention of assets or the benefit of the assets conferred by Marquis Property, which constitute investments of injured victims of the Marquis Ponzi Scheme, would be inequitable under the circumstances, without payment of the value of the assets to the Receiver for return to the injured persons.

**WHEREFORE**, the Receiver prays as follows:

A.  That the Court avoid all fraudulent transfers, and each and every Defendant be ordered to return to the Receivership Estate the funds that she received from Marquis Properties, and that judgment be entered against each Defendant and in favor of the Receiver

for the total amount transferred to each Defendant;

B.  In the case that the funds were spent to acquire any real or personal property, the Receiver requests that a constructive trust be imposed upon the property, and an order that it must immediately be turned over to the Receiver;

C.  For prejudgment interest on each of the payments transferred to Defendants in excess of the value provided by the Defendant in good faith; and

D.  For such other relief as the Court may allow.

DATED this 18th day of January, 2018.

RAY QUINNEY & NEBEKER P.C.

*/s/ Jascha K. Clark*
Matthew R. Lewis
Jascha K. Clark
Brittany J. Merrill

*Attorney for the Receiver, Maria E. Windham*

1440937